IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER L. SULLEN,<br><br>         Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>         Defendant.<br>_____/ | No. C 10-5898 CW<br><br>ORDER DENYING<br>PLAINTIFF'S MOTION<br>FOR SUMMARY<br>JUDGMENT OR FOR<br>REMAND AND<br>GRANTING<br>DEFENDANT'S CROSS-<br>MOTION FOR SUMMARY<br>JUDGMENT |

Plaintiff Esther L. Sullen moves for summary judgment or for remand in this social security appeal on the ground that the Administrative Law Judge (ALJ) failed to develop the record in regard to her mental functional capacity and failed to provide adequate reasons for rejecting her testimony regarding her symptoms of depression. Defendant Michael J. Astrue in his capacity as Commissioner of the Social Security Administration (SSA) opposes Plaintiff's motion and cross-moves for summary judgment. Plaintiff has not filed a reply. Having considered all the papers filed by the parties, the Court denies Plaintiff's motion for summary judgment or for remand, and grants the Commissioner's cross-motion for summary judgment.

BACKGROUND

In August 2007, Plaintiff filed applications for disability insurance benefits (DIB) and supplemental security benefits (SSI) under Titles II and XVI of the Social Security Act, alleging that she became disabled in December 2005 due to tendonitis, back

problems, anemia, manic depressive disorder, knee problems, asthma and bronchitis.  AR 141, 151.  The applications were denied initially, on reconsideration and, after a hearing, by an ALJ in a decision dated June 14, 2010.  At the hearing before the ALJ, Plaintiff's counsel asked the ALJ to order a consultative examination (CE) to determine Plaintiff's mental impairments.  The ALJ declined to order a mental CE, but stated that he would hold the case open for thirty days to wait for any additional records from Plaintiff.  Plaintiff did not file additional evidence of her mental impairments.  The ALJ's denial of benefits became the final decision of the Commissioner when the Appeals Council denied review.

At the time of the ALJ decision, Plaintiff was forty-three years old.  She has a high school education and past relevant work as a merchandiser, customer service representative, dispatcher and car jockey.  She lives with her children who, at the time of the hearing, were fourteen and sixteen years old.  Plaintiff has received treatment for physical and mental impairments, but only appeals the ALJ's order in regard to her mental impairments.

In January 2007, Plaintiff began treatment for complaints of depression and stress at the Schuman-Liles Clinic.  Administrative Record (AR) 348-51.  Her reported symptoms included crying, sleep disturbance, anergia (lack of energy), poor concentration and poor memory.  Dr. Stefan Lampe, a psychiatrist, completed a mental status intake exam, in which he noted Plaintiff's sickly appearance, psychomotor retardation, depressed mood and constricted affect.  AR 349.  Dr. Lampe also noted that Plaintiff had normal speech, no perceptual disturbances and normal thought

2

content. He indicated that she was alert and was of normal intelligence. AR 350-51. Dr. Lampe diagnosed a Major Depressive Disorder, Recurrent, Severe without psychotic features. AR 352. His treatment plan consisted of prescribing Prozac, for treating Plaintiff's depression, and Restoril, for treating her insomnia. AR 352.

At first, Plaintiff's response to this treatment was rated "fair." AR 344 (August 17, 2007). After several months, Dr. Lampe noted that Plaintiff's response to treatment was good. See AR 340 (December 5, 2007), AR 338 (June 5, 2008), AR 336 (July 3, 2008), AR 334 (March 3, 2009), AR 332 (May 20, 2009) and AR 330 (October 6, 2009).

On October 13, 2007, Plaintiff was examined for physical and mental impairments at the request of the SSA. In terms of mental status, the examiner found that Plaintiff was alert and oriented to time, place and person. AR 248. Her memory recall was three of three words immediately and two of three words at five minutes. AR 248. The examiner did not include mental limitations in his functional capacity assessment. AR 249. On November 1, 2007, Dr. Danilo Lucila, MD, completed a psychiatric review technique form about Plaintiff on behalf of the SSA. Dr. Danilo indicated that Plaintiff's impairment was "not severe," that she had an "affective disorder," that her functional limitations were mild in the areas of activities of daily living, social functioning and maintaining concentration, persistence or pace, and that she had no functional limitation due to episodes of decompensation. AR 269. He wrote that Plaintiff was in treatment for mental health issues, appeared to have stabilized, and was "practically

3

asymptomatic, . . . she can relate adequately. Impairment is non-severe." AR 259.

From June 2008 to February 2009, Plaintiff saw Sarah Weinberg, L.C.S.W., for counseling. AR 319. In June 2008, Ms. Weinberg's diagnosis of Plaintiff was Major Depression, Recurrent. AR 316. On May 5, 2009, Ms. Weinberg completed a mental impairment questionnaire indicating that Plaintiff's symptoms consisted of a short attention span, auditory hallucinations, sleep disorder, crying, tiredness, lack of energy and irritability. Her diagnosis of Plaintiff continued to be Major Depression, Recurrent, with a Global Assessment of Functioning (GAF) of 60, indicating only moderate difficulties in functioning due to mental impairments. AR 361. She also indicated that Plaintiff's understanding, memory, sustained concentration, persistence, social interaction and adaptation were all impaired by total distraction such that Plaintiff was not able to perform work-related mental functions. AR 362-63.

On March 14, 2010, Plaintiff underwent a neurological consultative examination at the request of the SSA. In regard to mental functioning, the examiner found that Plaintiff's mental status was normal and that she was alert and "well oriented to person with good higher cognitive functions." AR 383. He noted that she had a history of anxiety and depression, but made no other comment regarding her mental functioning. AR 383-84.

LEGAL STANDARD

A court may set aside the Commissioner's denial of disability benefits only when his findings are based on legal error or are not supported by substantial evidence in the record as a whole.

4

42 U.S.C. § 405(g); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance." Id. at 1098. The court must consider the entire record, weighing both the evidence that supports and that which contradicts the Commissioner's conclusion. Id.

Even when a decision is supported by substantial evidence in the record, it "should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978) (citing Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968)). Under SSA regulations, the Commissioner must apply a five-step sequential process to evaluate a disability benefits claim.[1] The claimant bears the burden of proof in steps one through four. Bustamante v. Massanari, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. Id. at 954.

---

[1] The five steps of the inquiry are

1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. See 20 C.F.R. § 416.920(b).
2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. See 20 C.F.R. § 416.920(c).
3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. See 20 C.F.R. § 416.920(d).
4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. See 20 C.F.R. § 416.920(e).
5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. See 20 C.F.R. § 416.920(f).

5

ALJ'S DECISION

At step one of the sequential process, the ALJ found that Plaintiff had not worked since the alleged onset date. AR 17. At step two, the ALJ found that Plaintiff had severe impairments of mild degenerative joint disease of the hands, obesity, asthma, degenerative disc disease of the cervical spine and depression. AR 17. At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments described in the regulations.

At step four, based on the medical evidence and the intensity, persistence and limiting effects of Plaintiff's symptoms, the ALJ determined Plaintiff's residual functioning capacity (RFC). AR at 18. The ALJ found that Plaintiff had the physical RFC to do light work with various postural limitations and with the mental restrictions to simple, routine, and repetitive tasks involving only simple decisions with few, if any, workplace changes. AR 18. The ALJ based his determination of Plaintiff's mental RFC on her testimony at the hearing and on her statements in the September 2007 function report she completed. The ALJ found that Plaintiff had mild restrictions in her activities of daily living as demonstrated by her ability to function as a single parent, handle bills and make shopping lists; that she had moderate difficulties in maintaining social functioning based on her ability to socialize with friends and attend church; and that she had moderate difficulties in maintaining concentration, persistence or pace based on her testimony that she has difficulty in focusing. AR 18. The ALJ also based his RFC determination upon the Schuman-Liles Clinic

6

progress records which indicated Plaintiff's good response to medication and mental status exams that were substantially within normal limits. AR 20.

At the hearing before the ALJ, a vocational expert (VE) testified that an individual with Plaintiff's age, education, work experience and RFC could not perform Plaintiff's past work. The ALJ adopted the VE's testimony and found that Plaintiff could not engage in any past relevant work. AR 21-22. At step five, the ALJ relied on the testimony of the VE and found that Plaintiff retained the ability to perform several "light" jobs existing in significant numbers in the national and local economies, such as a photocopy machine operator, electrical assembler and toy stuffer. On this basis, the ALJ found that Plaintiff was not disabled under the Social Security Act. AR 22.

## DISCUSSION

I. ALJ's Duty to Develop the Record

Plaintiff argues that the ALJ should have arranged for a psychiatric CE to determine her mental RFC because the ALJ rejected the opinions of both Ms. Weinberg and the state agency physicians and there was no other assessment of Plaintiff's mental RFC in the record. Defendant responds that a psychiatric CE was unnecessary because (1) there was sufficient evidence in the record to support the ALJ's finding that Plaintiff was mentally limited to simple, routine tasks and (2) the ALJ left the record open after the hearing to allow Plaintiff and her attorney the opportunity to submit additional evidence, see AR 27. Defendant argues that this discharged any duty to develop the record that the ALJ might have had.

7

In social security cases, an ALJ has the duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). One of the methods an ALJ has to develop the record is to order a CE at the SSA's expense. Reed v. Massanari, 270 F.3d 838, 841 (9th Cir. 2001). However, the burden of proving disability lies with the claimant so that the ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes, 276 F.3d at 459. The ALJ may discharge this duty in several ways including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing or keeping the record open after the hearing to allow supplementation of the record. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ's indication to plaintiff and her counsel that he would keep the record open so that they could supplement her doctor's report fulfilled ALJ's duty to supplement the record).

The ALJ considered all of the record evidence regarding Plaintiff's mental functioning. He noted that she began receiving mental health treatment at the Schuman-Liles Clinic beginning in 2007, where Dr. Lampe diagnosed major depressive disorder, that later progress notes showed that Plaintiff responded well to medication, that, by May 2007, her mental status exam was within normal limits and that a 2010 neurological report indicated no mental impairments. AR 20 (citing AR 293). The ALJ also

8

considered Plaintiff's treatment with Ms. Weinberg and the mental health questionnaire she completed, which he disregarded. Plaintiff does not dispute that the ALJ properly gave little weight to Ms. Weinberg's opinion.

Given Plaintiff's minimal mental health treatment, consisting of anti-depressant medication and visits with a social worker, and considering that Plaintiff's mental functioning had improved as a result of the treatment, the ALJ could have adopted the opinion of the state examiners who found that her symptoms were not severe. However, after considering Plaintiff's testimony, her self-assessment, and the medical record, he found that she had some mental limitations which he included in his RFC. The record was not ambiguous or inadequate to allow for evaluation and, thus, the ALJ had no duty to develop it further.

Furthermore, at the hearing, the ALJ told Plaintiff's counsel that, although he would not order a mental CE, he would keep the record open for at least thirty days so that Plaintiff could submit additional evidence. See AR 27. Thus, Plaintiff had the opportunity to submit additional evidence of her mental impairment, but chose not to do so. The fact that the ALJ kept the record open after the hearing for Plaintiff to submit additional evidence is sufficient to satisfy any duty to develop the record.

II. Plaintiff's Credibility

Plaintiff argues that the ALJ improperly rejected her testimony regarding her symptoms of depression. She argues that the record shows that she suffers from a severe, recurrent major depressive disorder, which produces significant and debilitating

9

symptoms. She points out that she described these symptoms in her testimony, which the ALJ rejected without providing any reasons.

"In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: the Cotton analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). The Cotton test is a threshold test which requires the claimant who alleges disability based on subjective symptoms to produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. Id. Once the claimant produces medical evidence of an underlying impairment, the ALJ may only reject the claimant's testimony if there is evidence that the claimant is malingering or by offering specific, clear and convincing reasons for doing so. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); SSR 96-7p. To determine a claimant's credibility regarding the severity of his or her symptoms, the ALJ may consider, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284.

The mental health evidence, including treatment notes showing that Plaintiff was improving from treatment with anti-depressant medication and a recent neurological examination indicating no

10

problems with mental functioning, show that Plaintiff barely met the <u>Cotton</u> requirement to produce objective medical evidence of an underlying impairment. In fact, there is no evidence of mental impairment for the first year of Plaintiff's claimed disability because her mental health treatment began in January 2007, one year after the December 2005 alleged disability onset date.

Furthermore, the ALJ did not disregard all of Plaintiff's testimony; he found Plaintiff's statements concerning the intensity, persistence and limiting effects of her mental symptoms to be not credible only to the extent they were inconsistent with the ALJ's RFC assessment. AR at 20-21. The ALJ provided several reasons for his finding of partial credibility. Most importantly, he noted the sparse and relatively normal mental health evidence. The ALJ also considered Plaintiff's activities of daily living, in that she helped her children get ready for school, helped them with their homework, made groceries lists and attended church. AR 18. Finally, the ALJ noted that Plaintiff testified that she was laid off from her last job as a dispatcher because her "temp" agency went out of business and that she then, unsuccessfully, attempted to gain other employment. Although he did not explicitly say so, the ALJ apparently inferred that this testimony contradicted Plaintiff's allegation that she was unable to work because of mental limitations.

These reasons are sufficient to support the ALJ's finding that Plaintiff's testimony regarding her mental health symptoms was only partially credible.

11

CONCLUSION

Based on the foregoing, Defendant's cross-motion for summary judgment is granted and Plaintiff's motion for summary judgment or for remand is denied.  Judgment shall enter accordingly.  The parties shall bear their own costs.

IT IS SO ORDERED.

Dated: 3/13/2012

CLAUDIA WILKEN
United States District Judge

12